**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

MARIE BRYAN               )
                          )
            Plaintiff,    )
                          )
            v.          )    Civil No. 2014-97
                          )
GOVERNMENT OF THE VIRGIN    )
ISLANDS,               )
                          )
            Defendant.   )
_____)
                          )
NAOMI CLARKE THOMAS,      )
                          )
            Plaintiff,    )
                          )
            v.          )    Civil No. 2014-98
                          )
GOVERNMENT OF THE VIRGIN    )
ISLANDS,               )
                          )
            Defendant.   )
_____)

ATTORNEYS:

**Richard P. Rouco**
**Robert M. Weaver**
Quinn, Connor, Weaver, Davies & Rouco LLP
Decatur, GA
    *For the Marie Bryan and Naomi Clarke Thomas*,

**Claude Walker, AG**
**Ariel Marie Smith-Francois, AAG**
Virgin Islands Department of Justice
St. Thomas, U.S.V.I.
    *For the Government of the Virgin Islands.*

<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, J.**

Before the Court are the federal claims of Marie Bryan and Naomi Clarke Thomas against the Government of the Virgin Islands.

## I.   <u>FACTUAL AND PROCEDURAL HISTORY</u>

All employees of the Government of the Virgin Islands ("GVI") are members of the Government Employees Retirement System ("GERS"). *See* 3 V.I.C. § 703(b). The GERS manages and provides retirement benefits for its members. *See* 3 V.I.C. § 701. Members of the GERS are entitled to receive a retirement annuity, the amount of which is determined by each individual member's years of service and her average salary. 3 V.I.C. § 706. In order to receive credit for their years of service, GERS members must make regular contributions to the GERS from their salary. 3 V.I.C. § 704. "Any member who has completed thirty years of service may retire on a full service retirement annuity notwithstanding his age, without reduction of annuity." 3 V.I.C. § 705(d).

On June 22, 2011, the Legislature of the Virgin Islands adopted Bill No. 29-0123, the "Virgin Islands Economic Stability Act" ("VIESA"). On July 5, 2011, VIESA was signed into law by the Governor of the Virgin Islands as Act No. 7261. VIESA was motivated by the GVI's "precarious financial condition." VIESA, Act No. 7261, preamble. The Act was intended to "balance[] the need to provide basic services while reducing the operating cost of the [GVI]." *Id.* Among other cost saving measures, VIESA mandated a 2-year hiring and firing freeze. VIESA, Act No. 7261, § 5. VIESA also provided for an 8% reduction in the salaries of all executive and legislative branch employees for the period of July 4, 2011, through July 3, 2013. VIESA, Act No. 7261, § 4.

Additionally, the GVI found that "there are government employees . . . who have been employed over thirty . . . years, who are eligible to retire from Government service and who are being paid in excess of forty-seven million dollars . . . annually in salary and fringe benefits." VIESA, Act No. 7261, preamble. This "burden on the Government Operating budget [wa]s overwhelming and unsupportable for much longer, unless many of these employees retire and aid in abating the Government's cash flow problems." *Id.*

To that end, Section 7 of VIESA ("VIESA § 7") provided an incentive in the form of a $10,000 payment "to any member of the

*Bryan v. Government of the Virgin Islands; Thomas v. Government of the Virgin Islands*
Civil No. 2014-97; Civil No. 2014-98
Memorandum Opinion.
Page 4

GERS who . . . attained thirty or more years of credited service completed as of the date of enactment of [VIESA] and elect[ed] to retire between June 30, 2011[,] and September 30, 2011." VIESA, Act No. 7261, § 7(a). Section § 7(k) of VIESA further provided that "any member of the GERS who . . . attained thirty or more years of credited service completed as of the date of enactment of [VIESA] shall pay an additional three percent (3%) of their salary into the GERS, effective October 1, 2011." VIESA, Act No. 7261, § 7(k).

Marie Bryan ("Bryan") is an employee of the Government of the Virgin Islands ("GVI") and a member of GERS. Bryan began working for the GVI on October 1, 1980. Bryan has maintained employment with the GVI since the effective date of VIESA. Since February 2012, Bryan has paid the additional 3% contribution to GERS.

Naomi Clarke Thomas ("Thomas") is a former employee of GVI and a member of GERS. Thomas began working for GVI in March 1979. Thomas continued to work after the effective date of VIESA until she retired on December 31, 2012. An amount equal to Thomas's 3% contribution was deducted from her first retirement payment.

On November 18, 2014, Bryan and Thomas brought separate actions alleging that Section 7 of VIESA violated the Age

Case: 3:14-cv-00098-CVG-RM   Document #: 998   Filed: 03/28/18   Page 5 of 24

*Bryan v. Government of the Virgin Islands; Thomas v. Government of the
Virgin Islands*
Civil No. 2014-97; Civil No. 2014-98
Memorandum Opinion.
Page 5

Discrimination in Employment Act ("ADEA"), the Virgin Islands
Civil Rights Act, and the Virgin Islands Discrimination in
Employment Act.  On May 8, 2015, the Magistrate Judge ordered
the two cases consolidated.

This matter was previously scheduled for trial on December
12, 2016. On December 8, 2016, the Court held a status
conference. At that conference, the parties agreed that the
matter should be tried on a stipulated record. The Court
proposed, and the parties agreed, that the trial of this matter
should be bifurcated, with the Court first addressing liability.
The Court then vacated the December 12, 2016, trial setting. The
Court also ordered the parties to submit a stipulated record.

On December 9, 2016, the parties jointly submitted the
following stipulations of fact to the Court:

1. Plaintiff Marie Bryan is a resident of St. Thomas,
   U.S. Virgin Islands, and was over age 40 as of the
   date of the adoption of VIESA.
2. Ms. Bryan is an employee of Defendant Government of
   the Virgin Islands' ("GVI") Department of Planning
   & Natural Resources. She began her employment with
   the GVI on October 1, 1980, and has been employed
   continuously since that time.
3. Ms. Bryan is a member of the GVI's Government
   Employees Retirement System ("GERS").
4. Plaintiff Naomi Clarke Thomas is a resident of St.
   Croix, U.S. Virgin Islands, and was over age 40 as
   of the date of the adoption of VIESA.
5. Ms. Clarke Thomas began her employment with GVI's
   Department of Human Services in March 1979, and
   became a member of GERS.

Case: 3:14-cv-00088-CVG-RM   Document #: 99   Filed: 03/28/18   Page 6 of 24

Bryan v. Government of the Virgin Islands; Thomas v. Government of the
Virgin Islands
Civil No. 2014-97; Civil No. 2014-98
Memorandum Opinion.
Page 6

6.  Ms. Clarke Thomas worked continuously until her
    retirement on December 31, 2012.

7.  On June 22, 2011 the Legislature of the Virgin
    Islands enacted the Virgin Islands Economic
    Stability Act of 2011 ("VIESA"), Act No. 7261. Among
    the provisions of VIESA was a retirement incentive
    offered by the GVI to GVI employee members of GERS.
    See VIESA Section 7.

8.  Pursuant to Section 7(a) of VIESA, the GVI offered
    a $10,000 incentive payment to GVI employee members
    of GERS with thirty or more years of credited service
    as of the effective date of VIESA who elected to
    retire between June 30, 2011 and September 30, 2011.
    See VIESA Section 7(a).

9.  In addition to the retirement incentive established
    by VIESA Section 7(a), the GVI also adopted a
    provision that "any member of the GERS who has
    attained thirty or more years of credited service
    completed as of the enactment of this Act shall pay
    an additional three percent (3%) of their salary into
    the GERS, effective October 1, 2011." See VIESA
    Section 7(k).

10. Among the financial conditions of the GVI considered
    by the Legislature in adopting VIESA was that "there
    are government employees . . . who have been employed
    for over thirty (30) years, who are eligible to
    retire from Government service and who are being paid
    in excess of forty-seven million ($47,000,000)
    annually in salary and fringe benefits . . ." See
    VIESA Legislative Recitals.

11. In February 2012 the GVI began deducting from Ms.
    Bryan's pay the additional 3% GERS contribution
    required by VIESA Section 7(k), and the 3% additional
    contribution continues to date.

12. Ms. Clarke Thomas continued to work for the GVI after
    October 1, 2011, but did not have the additional 3%
    contribution required by Section 7(k) of VIESA
    deducted from her pay.

13. In October 2012 Ms. Clarke Thomas decided to retire
    and met with a GERS analyst to initiate her
    retirement. The GERS analyst asked Ms. Clarke Thomas
    if she wanted her retirement annuity to be calculated
    based on her pre- VIESA 8% reduction salary pursuant
    to VIESA Section 4(c); Ms. Clarke Thomas responded
    that she did.

14. Ms. Clarke Thomas was informed by GERS that she was also required to pay the 3% additional contribution required by Section 7(k) of VIESA that had not been deducted from her pay even though she continued to work after October 1, 2011.

15. Ms. Clarke Thomas retired from her GVI employment effective December 31, 2012. In June 2013 Ms. Clarke Thomas received a lump sum payment for her unpaid retirement benefits owed since her retirement, from which GERS deducted, inter alia, the 3% additional contribution which had not been deducted from her pay while she continued to work after October 1, 2011.

16. On April 10, 2012 Ms. Bryan filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission.

17. On January 22, 2014 Ms. Clarke Thomas filed a charge of discrimination with the EEOC.

*Joint Stipulations*, ECF No. 111.

In addition, Bryan and Thomas filed the December 5, 2011, testimony of Kenneth Hermon ("Hermon") in *United Steel, Paper & Forestry, Rubber, Mfg., Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of the United States Virgin Islands*, No. CIVIL 2011-76, 2012 WL 1155131 (D.V.I. Mar. 29, 2012), *rev'd and remanded sub nom. United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of Virgin Islands*, 842 F.3d 201 (3d Cir. 2016). When Hermon testified, he had been the GVI Director of Personnel for more than five years. Hermon was also a member of the team that designed VIESA and analyzed its effect on GVI finances.

During his testimony, Hermon indicated that "[t]here was no cost savings with the implementation of the three percent. That three percent goes directly to GERS. There's no savings to the Government of the Virgin Islands." *See* ECF No. 82, Exh. 3, at 252. Rather, Hermon testified that "the purpose [of Section 7(k) of VIESA] was to, I guess for lack of a better term, offer some kind of penalty to those employees who did not opt to take the retirement option." *See id.* at 255.

When asked if the purpose of "the three percent pension contribution aspect of VIESA was to compel retirement-eligible employees to leave the payroll," Hermon stated that it was. *See id.* at 260. Herman acknowledged that there was "a difference between an employee's salary that . . . has 30 years with the territory, as opposed to a new hire," namely there was "a significant variance in pay" between the two. *See id.* at 256-57.

On March 20, 2018, the Court dismissed the territorial claims raised by Bryan and Thomas. *See Bryan v. Gov't of the Virgin Islands*, No. CV 2014-97, 2018 WL 1414841 (D.V.I. Mar. 20, 2018). The Court now turns to their ADEA claims.

## II.  <u>DISCUSSION & ANALYSIS</u>

### A. Disparate Treatment Claim under the ADEA

The ADEA prohibits an employer from discriminating against any employee who is at least 40 years old with respect to "compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1), 631(a). Privileges of employment include "all employee benefits, including such benefits provided pursuant to a bona fide employee benefit plan. 29 U.S.C. § 623(a)(1), 630(l). Subject to affirmative defenses, this prohibition generally extends to "retirement benefit plan[s] that treat[] older employees in the protected age group differently from younger employees." *E.E.O.C. v. Baltimore Cnty.*, 747 F.3d 267, 273 (4th Cir. 2014).

"An employer violates the ADEA either by relying on a 'formal, facially discriminatory policy requiring adverse treatment of employees' or by acting on an 'ad hoc, informal basis' motivated by an employee's age." *Id.* (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993)). In either circumstance, "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 180 (2009). *see also Ken. Retirement Systems v.*

*E.E.O.C.*, 554 U.S. 135, 141 (2008) (explaining that "where . . .
a plaintiff claims age-related disparate treatment (i.e.,
intentional discrimination because of age) the plaintiff must
prove that age actually motivated the employer's decision"
(alterations and internal quotation marks omitted)).

A violation of the ADEA can be shown with either direct or
circumstantial evidence of discrimination. *See Williams v. Dover
Downs, Inc.*, 288 Fed. App'x 29, 31 (3d Cir. 2008). Where no
direct evidence exists, ADEA claims are analyzed under the
burden-shifting framework of McDonnell Douglass. *Id.* "Under
*McDonnell Douglas,* the plaintiff bears the burden of proof and
the initial burden of production, having to demonstrate a prima
facie case of discrimination . . . ." *Smith v. City of
Allentown*, 589 F.3d 684, 689 (3d Cir. 2009). A prima facie case
of discrimination requires a showing that (1) the plaintiff is
forty years of age or older; (2) the defendant took an adverse
employment action against the plaintiff; and (3) the adverse
employment action was taken under circumstances giving rise to
an inference of discrimination. *See id.*; *see also Jones v. Sch.
Dist. of Philadelphia*, 198 F.3d 403, 411 (3d Cir. 1999) ("We
often have remarked that the elements of a prima facie case
depend on the facts of the particular case.").

*Bryan v. Government of the Virgin Islands; Thomas v. Government of the Virgin Islands*
Civil No. 2014-97; Civil No. 2014-98
Memorandum Opinion.
Page 11

If the plaintiff satisfies these elements, the burden
shifts to the employer, "who must then offer evidence that is
sufficient, if believed, to support a finding that it had a
legitimate, [non-discriminatory] reason for the [adverse
employment action]." *Keller v. Orix Credit Alliance, Inc.*, 130
F.3d 1101, 1108 (3d Cir. 1997).  Finally, "[i]f the employer
does so, the burden of production returns to the plaintiff to
demonstrate that the employer's proffered rationale was a
pretext for age discrimination. At all times, however, the
burden of persuasion rests with the plaintiff." *Smith v. City of
Allentown*, 589 F.3d 684, 690 (3d Cir. 2009) (citations omitted).

Here, Bryan and Thomas argue that the provision "thirty or
more years of credited service" in Section 7 of the Virgin
Islands Economic Stability Act constitutes a proxy for age. They
argue that this classification, along with the Hermon testimony,
are direct evidence of prohibited age discrimination.

In *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993), the
United States Supreme Court held that the termination of
employment solely on the basis of financial considerations
related to seniority is not actionable under the ADEA. *Id.* at
613. There, Hazen Paper Company ("Hazen") terminated the
employment of Walter F. Biggins ("Biggins"), a 62-year-old
employee of Hazen, to avoid paying Biggins any pension benefits.

*Id.* at 607. Hazen's pension plan vested after 10 years of
service, without reference to an employee's age. *Id.* The Supreme
Court first addressed the purpose of the ADEA, which was enacted
in response to Congress's "concern that older workers were being
deprived of employment on the basis of inaccurate and
stigmatizing stereotypes." *Id.* at 610. "When the employer's
decision is wholly motivated by factors other than age, the
problem of inaccurate and stigmatizing stereotypes disappears.
This is true even if the motivating factor is correlated with
age . . . ." *Id.* at 611.

The Supreme Court acknowledged that, "[o]n average, an
older employee has had more years in the work force than a
younger employee." *Id.* The Supreme Court explained, however,
that "an employee's age is analytically distinct from his years
of service." *Id.*

> Perhaps it is true that older employees of Hazen
> Paper are more likely to be "close to vesting" than
> younger employees. Yet a decision by the company to
> fire an older employee solely because he has nine-
> plus years of service and therefore is "close to
> vesting" would not constitute discriminatory
> treatment on the basis of age. The prohibited
> stereotype ("Older employees are likely to be ___")
> would not have figured in this decision, and the
> attendant stigma would not ensue. The decision
> would not be the result of an inaccurate and
> denigrating generalization about age, but would
> rather represent an *accurate* judgment about the
> employee-that he indeed is "close to vesting."

*Id.* at 610-11. Thus, "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" *Id.*

The Court left open "the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination." *Id.* at 612-13. The Court suggested that the ADEA would not permit using a non-age factor as a "proxy for age . . . in the sense that the employer may suppose a correlation between the two factors and act accordingly." *Id.* at 613.

The Eighth Circuit addressed such a circumstance in *Hilde v. City of Eveleth*, 777 F.3d 998 (8th Cir. 2015). There, Arthur Hilde ("Hilde") was passed over for a promotion because he was "eligible for retirement because he was over 50" and his employer was "looking for someone to fill the position 'long-term.'" *Id.* at 1005. The employer argued that "retirement eligibility is evidence of an employee's lack of commitment to a job, a legitimate concern." *Id.* The Eighth Circuit rejected this argument and held that the employer used retirement eligibility as a proxy for age. *Id.* at 1006-07. The court acknowledged that

an employer can permissibly take account of non-age factors that may be correlated with age. *Id.* at 1006. This, however, "is true only if these factors, although usually correlated, are wholly independent from age." *Id.* Eligibility for retirement in that case "is always correlated with age because it is dependent on the employee reaching 50, it cannot be 'divorced from age.'" *Id.*

> To assume that Hilde was uncommitted to a position because his age made him retirement-eligible is age-stereotyping that the ADEA prohibits. The prohibited stereotype—older employees are likely to be less committed to a job because they can retire at any time—figured in the City's decision. Using retirement eligibility to presuppose lowered productivity or dedication would not "represent an *accurate* judgment about the employee" unless evidence other than age indicates that the employee would, in fact, retire.

*Id.* (citations omitted).

In *Cruz-Ramos v. Puerto Rico Sun Oil Co.*, 202 F.3d 381 (1st Cir. 2000), the First Circuit addressed a similar, but distinguishable, situation. There, Puerto Rico Sun Oil Company ("Sun") was downsizing and needed to cut two technician positions in a particular department. To that end, Sun rated the seven technicians in the department on various pertinent criteria. *Id.* at 383. Justo Cruz-Ramos ("Cruz-Ramos") received the lowest score and was laid off. *Id.* When Cruz-Ramos asked why he was laid off, the manager of his department explained "that they had to get rid of one supervisor, and that because [Cruz-

*Bryan v. Government of the Virgin Islands; Thomas v. Government of the
Virgin Islands*
Civil No. 2014-97; Civil No. 2014-98
Memorandum Opinion.
Page 15

Ramos] was the one less affected by a discharge, since due to

[Cruz-Ramos's] age and years of service [Cruz-Ramos] qualified

for early retirement, they selected [Cruz-Ramos]." *Id.* at 385

(internal quotation marks omitted). The First Circuit held that

> the most that can be extracted from [the manager]'s
> statement is that the rankings may have been
> motivated by considerations of retirement
> eligibility. . . . [E]mployment decisions based on
> factors other than age, such as pension status, do
> not prove age discrimination even though such
> factors correlate with age to some extent.

*Id.* at 386. Accordingly, the First Circuit held that Sun's

reliance on retirement eligibility did not violate the ADEA. *Id.*

Here, the 3% provision was not directed towards a specific

age or range of ages. Rather, the provision was directed towards

all employees who had "attained thirty or more years of credited

service" and were therefore eligible to retire with full

benefits. *See* VIESA, Act No. 7261, § 7(k). As *Hazen Paper*

observed, decisions like this, which are based on "factors other

than age, such as pension status, do not prove age

discrimination even though such factors correlate with age to

some extent." See *Cruz-Ramos*, 202 F.3d at 386 (citing *Hazen

Paper Co.*, 507 U.S. at 611-12).

Further, unlike the circumstances in *Hilde*, there is

nothing in the record to suggest that "thirty or more years of

credited service," VIESA, Act No. 7261, § 7(k), was actually used as a "proxy for age . . . in the sense that the employer . . . suppose[d] a correlation between the two factors and act[ed] accordingly." *See Hazen Paper Co.*, 507 U.S. at 613. At most, the evidence shows that thirty years of service was used as a proxy for higher average salaries. "And like pension systems and seniority, compensation, though often correlated with age, is analytically distinct." *Kelly v. Moser, Patterson and Sheridan, LLP*, 348 Fed. App'x 746, 750 (3d Cir. 2009). For these reasons, Bryan and Thomas have failed to prove the enactment of the 3% provision "was actually motivated by *age*, not pension status" or salary. *See Kentucky Ret. Sys. v. E.E.O.C.*, 554 U.S. 135, 141 (2008) (internal quotation marks omitted).

**B. Disparate-Impact Claim under the ADEA**

"Claims that stress disparate impact . . . involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another . . . ." *Hampton v. Borough of Tinton Falls Police Dep't*, 98 F.3d 107, 112 (3d Cir. 1996) (internal quotation marks omitted) (quoting *Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977)). Though cognizable under the ADEA, "the scope of disparate-impact liability under [the] ADEA

is narrower than under Title VII." *Smith v. City of Jackson*, 544

U.S. 228, 240 (2005). To successfully bring a disparate-impact

claim under the ADEA,

> a plaintiff must demonstrate (1) the occurrence of
> certain outwardly neutral employment practices, and
> (2) a significantly adverse or disproportionate
> impact on persons of a particular [age] produced by
> the employer's facially neutral acts or practices.
> This formulation requires a plaintiff to isolate and
> identify the *specific* employment practices that are
> allegedly responsible for any observed statistical
> disparities. The plaintiff must also demonstrate a
> causal connection between those specific employment
> practices and the asserted impact on those of a
> particular age.

*Stockwell v. City of San Francisco*, 749 F.3d 1107, 1114 (9th

Cir. 2014) (alterations and internal quotation marks omitted).

Here, Bryan and Thomas have identified a specific outwardly

neutral employment practice in the form of Section 7(k) of

VIESA, which imposes a penalty on employees without an explicit

reference to age. Bryan and Thomas argue that this provision

necessarily has a significant adverse effect on employees over

the age of 40 because Section 7(k) of VIESA only imposes its

penalty on employees with thirty or more years of service.

The parties' stipulations include no statistical data

regarding the effect of § 7(k) of VIESA on individuals over the

age of forty. Earlier filings in the record indicated that the

parties had identified 58 additional GVI employees who had 30

years of credited service as of July 5, 2011. Those employees chose not to retire and paid the 3% contribution required by Section 7(k) of VIESA. The parties provided no information (1) with respect to the ages of these individuals; or (2) with respect to any demographical information about the composition of the GVI's workforce.

Several circuits have explicitly held that statistical evidence is a requirement for disparate-impact claims. *See Adams v. Lucent Techs., Inc.*, 284 F. App'x 296, 303-04 (6th Cir. 2008) ("[A] prima facie case of disparate impact requires a showing of adverse impact through relevant statistical analysis, and a complete failure to make any such statistical showing is fatal to a claim." (alterations and internal quotation marks omitted)); *Noreuil v. Peabody Coal Co.*, 96 F.3d 254, 259 (7th Cir. 1996) ("[A] disparate impact theory of discrimination requires the plaintiff to put forth statistical evidence demonstrating that the challenged employment practice has a disproportionately negative effect upon members of the plaintiff's protected class . . . ."). Indeed, though it may have stopped short of holding that disparate-impact claims always require statistical evidence, the Supreme Court has at least suggested this to be the case. *See City of Jackson*, 544 U.S. at 241 (explaining that, in disparate-impact claim, "the

employee is responsible for isolating and identifying the specific employment practices that are allegedly responsible for any observed statistical disparities" (emphasis and internal quotation marks omitted); *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994-95 (1988) ("Once the employment practice at issue has been identified, causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group."). Significantly, the Third Circuit has indicated that statistical evidence ordinarily is at the center of a disparate impact case. *See N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011) ("[The] *prima facie* showing [for a disparate-impact claim] *requires the plaintiff to prove a significant statistical disparity* and to demonstrate that the disparity he complains of is the result of one or more of the employment practices that he is attacking." (emphasis added) (alterations and internal quotation marks omitted)); *Meditz v. City of Newark*, 658 F.3d 364, 370 (3d Cir. 2011) ("The evidence in these 'disparate impact' cases usually focuses on statistical disparities."). Not surprisingly, given that approach, the Court has been unable to

locate a successful disparate impact claim that did not involve statistical data.

Even if Bryan and Thomas attempted to carry their burden here without statistical data, they would have significant challenges. The ADEA provides that "[i]t shall not be unlawful for an employer . . . to take any action otherwise prohibited [by the ADEA] . . . where the differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). The "reasonable factors other than age" provision is an affirmative defense available to an employer defending against a disparate-impact claim. *See Meacham v. Knolls Atomic Power Lab.*, 544 U.S. 84, 90-91 (2008).

"The focus of the [reasonable factors other than age] defense is that the factor relied upon was a 'reasonable' one for the employer to be using." *Id.* at 96. Thus, the "defense imposes a lighter burden on the employer than its Title VII counterpart, the 'business necessity' defense. Under the ADEA, the employer only needs to show that it relied on a 'reasonable' factor, not that 'there are no other ways for the employer to achieve its goals." *Karlo v. Pittsburgh Glass Works, LLC*, 849 F.3d 61, 69 (3d Cir. 2017) (alterations omitted) (quoting Smith, 544 U.S. at 243). For this reason, the Third Circuit has observed that "the [reasonable factors other than age] defense

imposes a relatively light burden on employers." *Karlo v.
Pittsburgh Glass Works, LLC*, 849 F.3d 61, 80 (3d Cir. 2017).

In determining whether Section 7(k) of VIESA was based on
reasonable factors other than age, the Court finds the Sixth
Circuit's decision in *Aldridge v. City of Memphis*, 404 Fed.
App'x 29 (6th Cir. 2010) instructive. In that case, a city
charter provision provided that policeman who had served for 30
years in the Memphis Police Department (the "Department") would
automatically be promoted to the rank of captain. *Id.* at 31.
Subsequent to the enactment of the automatic promotion
provision, the city found itself "in the midst of a serious
financial situation" and "needed to reduce spending to increase
its reserve fund." *Id.* at 32-33. Responding to that crisis, the
Department eliminated the captain rank and gave those employees
"the choice to retire or revert to their rank and salary prior
to their automatic promotion." *Id.*

Several of the demoted captains filed a disparate-claim
under the ADEA against the Department. *Id.* at 34. The district
court granted the police department summary judgment. *Id.* On
appeal, the Sixth Circuit affirmed. *Id.* at 41. The Sixth Circuit
assumed that "the elimination of the captain rank is a facially
neutral employment practice with a disparate impact based on
age." *Id.* Nevertheless, "demoting employees of a particular

seniority status for cost-saving and operational considerations"
qualified as a reasonable factor other than age. *Id.* "Whether
there were more logical or less disruptive ways for the
Department to increase its operating efficiency is beside the
point." *Id.; see also Cerni v. J.P. Morgan Sec. LLC*, 208 F.
Supp. 3d 533, 543 (S.D.N.Y. 2016) ("Courts have repeatedly held
. . . that "cost-savings" actions by employers, such as
terminating employees with higher salaries, are based on a
reasonable factor other than age and thus do not violate the
ADEA . . . .")

VIESA was enacted in 2011 to address what the Virgin
Islands Legislature perceived to be a period of "decreased
economic activity" in the Virgin Islands that coincided with a
"global economic crisis." VIESA, Act No. 7261, preamble. These
circumstances placed the GVI "in a precarious financial
condition" and "presented the people of the United States Virgin
Islands with a grave challenge." *Id.*

Of particular concern to the Legislature was the size of
the GVI's payroll. *See id.* At the time, the GVI was paying over
$47 million a year to employees with 30 years of service who
were entitled to retire with full benefits. *Id.* The Legislature
felt that this "burden on the Government Operating budget [wa]s
overwhelming and unsupportable for much longer, unless many of

these employees retire." *Id.* Addressing this concern, the Legislature enacted VIESA, which offered these employees a $10,000 incentive to retire. *See* VIESA, Act No. 7261, § 7(a). VIESA also imposed on those employees that did not retire an additional 3% GERS deduction as a penalty. *See* VIESA, Act No. 7261, § 7(k).

The 3% deduction was remitted to GERS and not retained by the GVI. Nevertheless, the 3% provision was an attempt to shrink a bloated government payroll by coercing higher paid employees to retire and ultimately reduce payroll expenses.[1] In other words, the decision to enact Section 7(k) of VIESA was based on considerations of cost. Such cost-saving measures are routinely held to be reasonable factors other than age. *See, e.g.*, *Young v. Cty. of Nassau*, 511 Fed. App'x 35, 39 (2d Cir. 2013) ("[T]he policy is nonetheless lawful under the ADEA because it is 'based on reasonable factors other than age,' namely the need to save money . . . ." (quoting 29 U.S.C. § 623(f)(1))). While there may have been "more logical or less disruptive ways" for the GVI to achieve this goal, that is not for the Court to decide in this context. *See Aldridge*, 404 Fed. App'x at 41. Accordingly, the

---

[1] By focusing on employees with vested pensions, the policy was also directed towards those employees for whom terminated employment would cause the least hardship.

*Bryan v. Government of the Virgin Islands; Thomas v. Government of the Virgin Islands*
Civil No. 2014-97; Civil No. 2014-98
Memorandum Opinion.
Page 24

Court holds that Section 7(k) of VIESA was motivated by reasonable factors other than age.

### III. CONCLUSIONS

For the reasons explained above, the Court will enter judgment in favor of the GVI on the federal counts. An appropriate judgment accompanies this memorandum opinion.

S\_____

**CURTIS V. GÓMEZ**
**District Judge**